## Henry Caseaux v. His Creditors

The privilege on the price of the property sold, where the price has not been paid by the purchaser, nor passed into an account current between him and the insolvent, granted to the consignor by art. 3215 of the Civil Code, in the event of the insolvency of the consignee, will not be affected by the fact that the property was sold with other property of the same kind, and one note taken for the price of both, where the bill of sale shows the price of each parcel, and the amount collected by the syndic can be apportioned accordingly.

Where in the settlement of the estate surrendered by an insolvent, the proceeds of the moveables are insufficient to pay the privileged charges, the property on which liens or mortgages exist, and not the creditors holding such liens and mortgages, must contribute to their payment.

The privilege of a vendor on the unpaid price of property sold by an agent who has made a *cessio bonorum*, is superior to that acquired by levying a *fi. fa.* on notes given for the price, in the hands of an attorney of the insolvent before his cession. C. C. 3215. C. P. 722.

Appeal from the Parish Court of New Orleans, *Maurian*, J.

Morphy, J. This appeal is taken by John Slidell, from a judgment allowing a privilege claimed by Amédée Larrieu, a merchant of Bordeaux, on the proceeds of thirty half pipes of brandy, consigned to the insolvent for sale, in 1837. The record shows, that this brandy was sold, together with seventeen other half pipes, to Cazenove, Guieu & Co., in one bill of sale, the brandy of Larrieu for $2885 62, and the remainder for $1700 31, making an aggregate amount of $4585 90, for which the purchasers gave their promissory note, payable at six months from the 2d of February, 1837; that, on the 5th of April following, this note was exchanged for three other notes of Cazenove, Guieu & Co., of 1528 64 each; that, in consequence of some unexplained arrangement between Caseaux and Charles Garnier, these three notes went into the hands of the latter; that, in September, of the same year, Cazenove, Guieu & Co., made some payments, renewed these notes by giving others, and, among them, four notes drawn by themselves, making together $2522 38; that, after the death of Garnier, Caseaux claimed as his property, and recovered from the curator of Garnier's estate, these identical four notes given in renewal. Whether Garnier held these notes as agent or pledgee, does not appear from the evidence. While they were in the hands of W. C. Micou ,as Caseaux's attorney, these notes

were levied upon by John Slidell, a judgment creditor of the latter. Caseaux having subsequently failed, Micou handed over to the syndic the four notes recovered of Garnier's estate, and a sum of $1247 14 which he had received in part payment of them from the Improvement Bank, after retaining $200 for his professional services. These facts sufficiently establish, we think, the identity of the money received by the syndic, with the proceeds of the brandy sold to Cazenove, Guieu & Co., and entitle the opponent to the privilege which article 3215 accords on the price of goods sold by a consignee or agent, when such price has not been paid by the purchaser. The circumstance of the opponent's brandy being sold together with another lot, should not affect or destroy his privilege, as the bill of sale shows the price of each parcel, which is included in the note or notes, and the amount collected by the syndic can be easily apportioned according to the amount of each sale.

From certain settlements and negotiations which appear to have passed between Garnier, and Cazenove, Guieu & Co. and the Improvement Bank, an attempt has been made to show that all the notes given in renewal to Garnier, have been paid and extinguished. An examination of these transactions, as they appear from the documents, does not bring us to such a conclusion. They, on the contrary, account for the manner in which the Improvement Bank held the $1247 14, which they gave in part payment of the four remaining notes of Cazenove, Guieu & Co., which were held by Garnier. It appears that Cazenove, Guieu & Co., for the purpose of paying the Bank, and providing a fund to pay their notes in Garnier's hands, sold to that institution goods to the amount of $8442 32; that, of this amount, $2775 78 were placed to the credit of Garnier's succession, to be applied to the notes of Cazenove, Guieu & Co., and the balance, with a small deposit subsequently made by them, paid all their direct liabilities to the Improvement Bank, and a note of $937 25 due to another person. If from the sum credited to Garnier's succession, which was - - - - - $2775 78 we deduct one of the notes of - - 1528 64 which appears to have been either discounted by, or pledged to the bank by Garnier, we find - $1247 14

left in the Bank to be applied to the four remaining notes of Cazenove, Guieu & Co., held by Garnier ; but these notes having been decreed to belong to Caseaux, the Bank paid to his counsel, Micou, this balance, which is the fund now in dispute between the parties.

It then remains to determine the amount coming to the opponent Larrieu, out of the money received by the syndic. The account of sales rendered to him by the insolvent, shows the nett proceeds to be $1300 02. The Judge below allowed him $294 50, that sum bearing to the money collected by the syndic the proportion which the debt of $1300 02, due Larrieu for his brandy, bears to the whole proceeds of the two lots sold together. An examination of the documents shows two slight errors, which we have been called upon to correct. Larrieu's brandy was sold only for $1 25 per gallon, instead of $1 28, as mentioned in the account rendered to him by Caseaux, making a difference of $71 06 in the nett proceeds. It appears also, that there were 80 gallons short in Larrieu's brandy, which at $1 25 per gallon, makes another difference of $100, for which Caseaux made an allowance in his settlement with the purchasers, but of which no mention is made in the account rendered to Larrieu. These two sums being deducted, reduce the nett proceeds to $1128 35, which will make Larrieu's proportion amount only to $257 58 of the money in the hands of the syndic. It has been finally urged, that Larrieu should, on this amount, contribute the per centage of thirty per cent, which the tableau shows is necessary to pay privileged expenses, after exhausting every fund not subject to any privilege. In *Janin* v. *His Creditors,* 10 La. 555, and in other cases, we have held that it is the property on which liens, or mortgages exist, which owes a contribution, in case the proceeds of the moveables are insufficient to meet the privileged charges, and not the creditors holding such liens or mortgages. 5 Mart. 468. 6 Mart. 519. The contribution, therefore, in this case must be made on the fund of $1047 14, and out of the remaining balance, to wit, $731 94, Larrieu, who holds a vendor's privilege, must be paid in preference to Slidell, who has only the privilege he has acquired under his seizure. Code of Practice, art. 722. Civil Code, art. 3215.

It is, therefore, ordered that the judgment of the Parish Court be so amended as to allow the privileged claim of Larrieu only for $257 58, instead of $294 50, as his proportion of the proceeds of the brandy sold to Cazenove, Guieu & Co., in the hands of the syndic, and that it be affirmed in all other respects ; the appellee paying the costs of this appeal.

*Lockett* and *Micou*, for the opponent, Larrieu.
*Thomas Slidell*, syndic, contra.