### AUGUSTE DEVRON v. HIS CREDITORS.

Where mortgage creditors not only did not oppose the sale by the syndic of the mortgage property, and did not endeavor to enforce against him the pact *de non alienando*, but took a rule upon him to compel him to sell the property for cash, they cannot complain that the proceeds of the sale are burthened with the charge of the surrender, the movables proving insufficient.

*By the Court:* We are not prepared to say that a privilege for law charges does not attach as well to property mortgaged with the foregoing pact as without it, so long as the title to the property has not been divested by a sale. The pact gives the creditor a more easy mode of seizing the mortgage property, but does not elevate his mortgage into a privilege.

The proceeds of mortgaged property ought to be applied, whether there are one or several immovables, to the payment of the privileges in the order in which the property was mortgaged, commencing with the most recent and ascending to the most ancient.

The mode of contribution to debts *privileged generally upon movables and immovables* has been judicially determined. The decisions are that the immovables, not the mortgage creditors' owed the contribution and that these privilege debts must be borne by the immovables *pro rata* according to the price which they produced respectively, and this rule is not opposed to Articles 3236, 3237 of the Code. SPOFFORD, J., with whom concurred LEA, J., dissenting.

C. P. 715.

APPEAL from the Fourth District Court of New Orleans, *Reynolds*, J. *Magne*, for *Rochereau & Co.*, appellants. *Dufour*, for Syndic.

MERRICK, C. J. (SPOFFORD, J., and LEA, J., dissenting.) *Eugene Rochereau & Co.* appeal from a judgment homologating a tableau of distribution.

They are mortgaged creditors, and complain of the judgment on the following grounds, viz:

I. and II. "That having seized the property prior to the surrender they could not be divested of the rights they had so acquired. That having in their favor the pact *de non alienando*, they have the right to take the proceeds of the sale of the property without any further costs and charges than would have been incurred by a sale under their order of seizure and sale which was

arrested by the surrender; that it is unjust to impose upon them, the movables proving insufficient, almost the entire charges of the surrender."

In answer to this reasoning it may be replied, that the opponent not only suffered the property to be sold without objection and without endeavoring to enforce against the syndic the pact *de non alienando* on which they were relying, but they took a rule upon him to compel him to sell the property mortgaged for cash.

Neither are we prepared to say that a privilege for law charges does not attach as well to property mortgaged with the foregoing pact as without it, so long as the title to the property has not been divested by a sale. The pact gives the creditor a more easy mode of seizing the mortgaged property, but does not elevate his mortgage into a privilege. We see no error in the ruling of the court in allowing the privileges to be paid, for want of movables, out of the immovables specially affected with the mortgage of opponents.

III. The third objection is, that the division of the privileges among the mortgage creditors, and charging them therewith *pro rata* is in direct opposition to the principles of the law of mortgages embodied in the Code. In support of this proposition the appellant cites Article 3236 of the Civil Code, and insists that the court ought to have charged the privileges against the proceeds of the property in the order in which it was mortgaged beginning with the *least* ancient and ascending in this order, so that the younger mortgages should be compelled to bear the loss, and not compel the older ones to bear any portion of the same.

To this it is replied, that the opponents are made to contribute to the privileged expenses by virtue of Art. 3236 C. C.; that the second paragraph of the Article speaks of the *creditor* who is to bear the loss, showing clearly its application or reference exclusively to different special mortgages on the same property; whereas, the first paragraph containing the rule of the law has invariably been construed to mean that it is not the *creditor* holding the mortgage, but the *property* on which the mortgage exists which is liable to the contribution. In support of this position counsel for appellees cite 5 M. 469, 6 M. 520; 10 L. R. 554, 18 L. R. 372; and 6 Rob. 268.

It may be remarked in regard to the first two of the authorities cited, that they were decided under the old Code, the provisions of which are not the same as the Code of 1825. In regard to the more recent cases the attention of the court does not appear to have been directed to Articles 3236 and 3237, which seem to us to be provisions directly in point. They read as follows:

"Art. 3236. With the exception of special privileges which exist on immovables in favor of the vendor, of workmen and the furnisher of materials, as declared above, the debts privileged on the movables and immovables generally, ought to be paid, if the movables are insufficient, out of the product of the immovables, and slaves belonging to the debtor, in preference to all other privileged and mortgaged creditors.

The loss which may result from their payment must be borne by the creditor whose mortgage is less ancient and so in succession, ascending according to the order of the mortgages or by *pro. rata* contributions where two or more of the mortgages have the same date."

"Art. 3237. When the debts privileged on the movables and immovables cannot be paid entirely, either because the movables are of small value or subject to special privileges which claim a preference or because the movables and

DEVRON<br>*v.*<br>CREDITORS.

immovables together do not suffice, the deficiency must *not* be borne proportionally among the debtors (creditors), but the debts must be paid according to the order established above, and the loss must fall on those which are of inferior dignity." (*du rang inferieur.*) But it is contended that the foregoing Articles of the Civil Code apply to cases where the same property is affected by the all the mortgages, and that then only the loss must fall upon the junior mortgage and that where there are several pieces of property, the privilege attaches to them all and under the authorities cited they must bear the loss *pro rata*. The reason why there should be the distinction contended for between one or several immovables is by no means clear.

The first mortgage creditor having his mortgage upon a single immovable, would, in the event of insolvency, have the right to insist that the proceeds of the movables and unincumbered immovables should be exhausted before his fund should be required to contribute to the payment of the general privileged claims. Let us take another step; a second mortgage creditor acquires a right upon another immovable, and the debtor becomes insolvent. Here, this second mortgage creditor has the right in like manner to compel the application of the proceeds of the movables and unincumbered immovables to the payment of the general privileges before his fund shall be required to contribute. But suppose the movable and unincumbered immovables are insufficient to meet the privileged claims, and that the mortgaged property must contribute, and he were to call upon the senior mortgage creditor, to contribute to the payment of the privileges, would there be any want of equity in a reply to him, from the first mortgage creditor, to this effect: "Sir, when I took my mortgage, the very immovable, the proceeds of which you now claim, was liable, in the hands of my debtor, to be first exhausted for the payment of all general privileges before I could be called upon to contribute at all. You have acquired no greater right than the debtor had, who gave you the mortgage"?

The compilers of the Civil Code of 1825, having made no exception, appear to have adopted the view, that the proceeds of mortgaged property ought to be applied, whether there are one or several immovables, to the payment of the privileges in the order in which the property was mortgaged, commencing with the most recent, and thus ascending to the most ancient. This is also in harmony with Article 715 of the Code of Practice, which requires the holder of a legal or judicial mortgage, to discuss other property which the debtor has in his possession, and even that which he has alienated since the purchase, before requiring payment of a purchaser of property bought at Sheriff sale, which is subject to a legal or judicial mortgage. The reason announced by the lawgiver, in the same article, is: " Because the creditor who has a general mortgage, can only act against the property of which his debtor disposed, in the order in which the alienations have been made, beginning at the most recent and ascending to the most ancient."

Although the *property* contributes, and not the mortgage creditors, to the payment of the privileges, nothing prevents the appropriation of the proceeds of the mortgage property to the payment of the privileges in an inverted order from that in which the mortgages were created.

Since the adoption of the Code of 1825, we do not think the point now before us has been expressly decided. The cases of *Janin* v. *His Creditors*, 10 L. R. 554; *Montouchet* v. *Ferraud*, 18 L. R. 372 ; and *Cazeau* v. *His Credi-*

*tors*, 6 Rob. 268, without directly deciding the case, seem to affirm, by implication, the decisions in the 5 Martin, 469, and 6 Martin 520, decided under the Old Code. In the case of *Dreux* v. *His Creditors*, 7 N. S. 637–640, the court notice the change in the legislation introduced by Article 3236, but the case itself having arisen before the Code of 1825, was decided under the provisions of the Old Code.

We consider the provisions of the Code clear and unambiguous, and that hitherto there has not been any interpretation placed upon the articles cited, which could weigh as an authority against what appears to us to be their obvious meaning.

The mortgages of *François Jartoux* and *Mrs. Devron*, being both junior to those of *Eugene Rochereau & Co.*, the property subject to the subsequent mortgages, must first contribute to the payment of the privileges, and the fund subject to the mortgage of *E. Rochereau & Co.*, can only be applied to the payment of the residue of the privileges, after the funds subject to the junior mortgages are exhausted.

It is therefore ordered, adjudged and decreed by the court, that the judgment of the lower court be amended, by directing that said tableau of distribution, filed 7th November, 1855, be further amended by applying the whole instead of a part of the following sums, to the payment of expenses, viz :

Amount of movables and collections...............................$324
The proceeds of the undivided half of thirteen lots in the Third District. .310
Lots at Carrollton, set down on tableau as No. 9.......................110
Price of slave *Rosania*..........................................270

Total...............$1014

That the claims of *François Jartoux* and *Mrs. Devron*, to any part of said sums, be rejected; that the sum of $18,842 60, mentioned as the proceeds of property mortgaged to said *E. Rochereau & Co.*, contribute to the payment of the expenses and privileged claims, $957 98, instead of $1589 82, mentioned in said tableau, leaving $17,270 02, to be distributed to said *Eugene Rochereau & Co.* And it is further ordered, that the Judgment of the lower court, so amended, be affirmed, and that the appellees pay the costs of the appeal.

SPOFFORD, J., (with whom concurred LEA, J.,) dissenting. It appears to me, that the mode of contribution to debts, *privileged generally upon movables and immovables*, has been judicially determined in the cases of *Janin* v. *His Creditors*, 10 L. 554 and *Cazeau* v. *His Creditors*, 6 Rob. 268, in both of which cases the court must have had in view Articles 3236 and 3237 of our present Code.

The decision was, that the immovables, not the mortgage creditors, owed the contribution, and that the privileged debt aforesaid, must be borne by the immovables *pro rata*, according to the price which they produced respectively.

Nor does this interpretation seem to me to be opposed to the fair meaning of Articles 3236 and 3237.

The reference to different mortgages, according to their date, must be taken to refer to different mortgages upon the same thing.

Conventional mortgages, in due form, upon different things, are of equal dignity irrespective of their dates.

The argument, that the eldest mortgagee of a single immovable, looks to the fact, that the mortgagor has at the time other unincumbered immovables to respond first to the privileged claims in question in case of insolvency, would seem to imply that the mortgagor was bound not to alienate his other immovables, or, if alienated, that they would still be liable to contribute, when the opposite is the fact.

Until death or a declared insolvency, the privileged claims under consideration do not spring into existence. When they arise, I think they attach indifferently to all the immovables surrendered, and thus each must pay its quota. When there are two or more creditors, with mortgage upon the same thing, their rank is fixed by the Code.

On this point, I dissent from the opinion just pronounced.

