## PIERRE DEVERGES v. HIS CREDITORS.

With the exception of special privileges, which exist on immovables in favor of the vendor, of workmen and furnishers of materials, as declared above, the debts privileged on the movables and immovables generally, ought to be paid, if the movables are insufficient, out of the products of the immovables and slaves belonging to the debtor, in preference to all other privileged and mortgaged creditors. The loss which may then result from their payment must be borne by the creditor whose mortgage is least ancient, and so in succession, ascending according to the order of the mortgages, or by pro rata contributions where two or more of the mortgages have the same date.

When the debts privileged on the movables and immovables cannot be paid entirely, either because the movable effects are of small value, or subject to special privileges which claim a preference, or because the movables and immovables together do not suffice, the deficiency must not be borne proportionally among the debtors, but the debts must be paid according to the order established above, and the loss must fall on those which are of inferior dignity.

APPEAL from the Second District Court of New Orleans, *Morgan*, J. L. *Castera* and G. *LeGardeur*, for B. *Soulie*, syndic and appellant.— In her opposition Mrs. de St. Romes contended that the note, for securing the payment of which the special mortgage of 1855 had been granted, was in her possession and still unpaid; that if the mortgage ever was canceled, the cancelment of it was erroneous and wrongful, done without her knowledge, either through error or collusion, and was, therefore, null and void; and the Court maintained her opposition upon the ground that "the note was still in her hands; that it had never been paid nor canceled; that the mortgage, it is true, had been erased on the books of the Recorder; but there was no proof that she had authorized such erasure." In other words, in a case where the acts of two public officers, the Notary and the Recorder, were assailed, the Court, in violation of the legal presumption omnià rité acta, shifts the burden of proof from the party who assails, to the innocent third parties who defend, the correctness of these acts. This is manifestly erroneous.

In the case of *Delavigne, syndic,* v. *Gaiennie and others,* 11 Rob., p. 175, this Court said: "Under our laws, the principle of publicity of mortgages is important and inviolable; it is the basis upon which the rights of mortgage creditors rest, and the source from which they are derived: and, were we to recognize that, with regard to third persons, strangers to anterior judicial proceedings, erasures of mortgages, apparently legal and

sanctioned by a judgment of a Court of competent jurisdiction, can be enquired into and successfully disputed; and that such mortgages can be reinstated with all their previous and anterior effects, there would result the greatest confusion in our system of mortgages; no reliance could be placed on the certificates of their Recorders; no man would dare to transact any business in which this contract would be the basis of the transaction; and our laws upon this subject, instead of being a protection to honesty, and a beacon to our citizens in one of their most ordinary transactions of life, would be used as a means by which frauds could be successfully practiced, or as snares to the unconscious and unwary. We cannot sanction the doctrine adopted by the judgment appealed from, by which, as Duranton says, the principle of the publicity of mortgages is violated in its consequences; and we conclude that the Judge à quô erred in reinstating the plaintiff's judicial mortgage, in its effects against the rights acquired, since its erasure, by the appellant.

In the case of *Kemp* v. *Rowly,* 2 A. 318, your predecessors held that the release of a mortgage in favor of a minor by the tutor who acknowledges payment, though fraudulently, was good and valid in favor of third parties, and said: "The reasons of the Court in the case of *Delavigne* v. *Gaiennie* (above quoted) have a direct application to the facts in this case, and were a contrary doctrine established, the purpose of the laws concerning the recording of mortgages would be completely frustrated."

In *Adle* v. *Anty,* 5 A. 633, this Court again said: "The argument of the plaintiff is that the want of reinscription cannot be attributed to the fault of the creditors. But, in our opinion, this argument is unsatisfactory. The judicial mortgage exists and has vitality only by inscription. It is this which gives the public notice, and establishes a lien against third persons. If there be no inscription, there is no judicial mortgage. It is not what the Recorder ought to or might have done, but what he does, that we must look to in order to ascertain the rights of parties. If the public record is considered as the sole standard by which those rights are to be determined, the community can always know with certainty what conventional or judicial mortgages exist on a man's property, and can deal with him securely. But if, instead of looking to the record, Courts let in proof of unsuccessful diligence of the creditors to get his mortgages recorded, and the remissness or fault of the public officer, all the security and certainty contemplated by our registry system is gone, and a wide door is opened to injustice and frauds. The remedy of the creditor who loses his rights by want of proper inscription is against the officer, in damages. His fault or fraud is not to be visited upon the public."

2. The syndic, following the express provisions of the Code and the ruling of this Court in the case of *Devron* v. *His Creditors,* 11 A. 482, had applied the proceeds of the mortgaged property to the payment of the privileges in the order in which the property was mortgaged, commencing with the most recent and ascending to the most ancient. But this mode of contribution was objected to by Mills, Judson & Co. upon the ground

that "conventional mortgages in due form upon different things, are of equal dignity, irrespective of their dates"; and the lower Court, adopting their views, ordered "that their opposition should be maintained so far as it relates to the mode of contribution among the mortgage creditors, and that the mode of distribution of the tableau be so changed that, after exhausting the proceeds of movables and unencumbered immovables, the several properties mortgaged must contribute pro rata towards the discharge of what remains to be paid of the general privileges, senior mortgages on the same property being preferred to those of more recent date, and mortgages of the same date on the same property being made equally subject to a pro rata loss.

In coming to that conclusion, the lower Court evidently disregarded the provisions of Arts. 3236 of the Civil Code, and overruled the interpretation placed upon them by this Court in the case of *Devron* v. *His Creditors.*"

*J. Magne, for F. Roumieu.*—1. The mortgage was regularly erased on the mortgagor presenting to the notary the mortgage note; and this is conclusive as to innocent third parties.

Again, an act cannot be declared null and void, collaterally, particularly as to third parties. It is said that the insolvent being the agent of the widow, he availed himself of that situation to erase fraudulently that mortgage. But this pretended fraud of the insolvent is a mere surmise, unsupported by any evidence; and then, the fact, were it proved, could not help her in this case, for this obvious reason, that, whenever out of two persons one must suffer, it is the one who is in fault which must suffer, and not the one who is not in fault. *Walker* v. *Cassaway*, 4 An. pp. 19, 20.

But there is another legal ground which renders the pretension of Widow St. Romes untenable. The note came to the hands of the mortgagor, as shown by the certificate of erasure of the notary; nay, as shown by the testimony of the notary and of Foulon, it appears not only that the note was in the hands of Deverges, but that the mortgage was erased with the consent of said Widow St. Romes. Now, the note having come to the mortgagor's hands, the debt was ipso facto extinguished, and the mortgage gone. C. C. 2126, 3251, 3252, 3374, par. 4. 1 Hen. Dig. (new ed.) p. 959, No. 10, p. 960, Nos. 15, 17. *Hill* v. *Hall*, 4 Rob. 416. C. C. 2214. *Peets* v. *Wilson*, 19 La. 480. *LeBeau* v. *Glase*, 8 An. 474–477, and authorities quoted there.

II. The pro rata system, which was adopted by the District Judge, contrary to the decision of the Supreme Court, in the leading case of *Devron* v. *His Creditors*, 11 An. 482, is (in our humble opinion) erroneous and in direct opposition to the principles of the law of mortgages embodied in our Codes.

Article 3236 C. C. reads thus: "With the exception of special privileges which exist on immovables in favor of the vendor, of workmen and furnishers of materials, as above declared, the debts privileged on the mova-

bles and immovables generally, ought to be paid, if the movables are insufficient, out of the product of the immovables and slaves belonging to the debtor, in preference to all other privileged and mortgage creditors. The loss which may then result from their payment must be borne by the creditor whose mortgage is least ancient, and so in succession. ascending according to the order of the mortgages, or by pro rata contributions where two or more of the mortgages have the same date."

This language is clear and conclusive, and in strict accordance with our theory of mortgages: "qui prior est tempore, potior est jure." C. C. 3297.

Under the old French law, this principle was admitted without contradiction: "C'est véritablement une règle première et principale says Basnage, que le plus ancien créancier doit être mis le premier en ordre: qui prior est tempore, potior est jure. L. Generaliter D. qui pot. in pign. hab.; Basnage, Traité des Hypothèques, vol. 2, p. 17; Pothier des Hypothèques, § 3; 7 Pothier's Pandects, p. 400."

The Napoleon Code, from which our mortgage laws were taken, does not contain any express provision like the one embodied in our Art. 3236; but it is so clearly a deduction or corollary from the principles of the hypothecary law, that it was adopted by the most eminent jurists and commentators there, and acted upon and sanctioned by the tribunals as good law. Grenier, Traité des Hypothèques, vol. 1, p. 376 et seq., fully elucidates this subject; and he emphatically says that he cannot conceive how a contrary opinion could ever have come across the mind of any jurist. Troplong, Hypothèques, vol. 3, p. 325 et seq., adopts the same doctrine, as well as Battur Traité des Priviléges et Hypothèques, vol. 4, p. 206, No. 669.

In the case of *Broussous* v. *Ignon,* 21 Sirey, p. 360, the Cour de Cassation held that where a general mortgage, anterior to all the special ones, reduces the proceeds of the sale in such a way that all the special mortgages cannot be paid in full, the price of the property more recently mortgaged is to be first taken, and so on going up.

"In the concurso of several creditors having, every one of them, a special mortgage on different immovables, with a creditor having a general mortgage anterior to all the special ones, the immovables subject to special mortgages must contribute to the payment of the general mortgage creditor, according to the date of their respective inscriptions or registry, beginning by the last one. The last registered creditors cannot require that the general mortgage be taken pro rata on all the immovables, without heeding the date of their registry." *Gazard* v. *Grimal et al.,* Cour de Riom, 31 Sirey 2 Partie, p. 310. Same decision, in *Clereau* v. *Bonot,* Poiters, 30 Dalloz, 2 part, p. 125; *Leroy* v. *Besson,* Cassation, 30 Dalloz, 1 part, p. 304; *Boulon* v. *Bouvier,* Aix. 1834, Dalloz, 2 part, p. 124; *Morange* v. *Deschamps,* Cassation, 1847, Sirey, 1 part, p. 830.

All these decisions, although rendered in cases where it was a first general mortgage which had to be paid, instead of privilege charges, as is the case here, are, however, strictly in point; because, in a concurso, the

anterior general mortgagors, like the privilege creditors, must be first paid any how ; and that, in both cases, the only question is : how is the sum necessary to pay the same to be assessed ? Or, in other words, " whether it is to be taken out of the proceeds of the property specially mortgaged, indiscriminately and pro rata, or out of the proceeds of the same property, beginning with the more recent mortgages and going up according to the dates of their registry ? "

Hence, we think, to be justified in drawing the conclusion, that the pro rata system being rejected in France, it ought to have been rejected here also, under the old Code ; because the mortgage laws of France are the same as the mortgage laws of Louisiana were under the old Code (1808), and up to 1825.

It appears, however, that the pro rata system prevailed here under our old Civil Code, as is shown by the case of *Delor* v. *Montegut*, 5 M. R. p. 468. So that there was a diversity of jurisprudence under the same written laws. So that, again, supposing that the jurisprudence in France had been favorable to the pro rata system, it could not shake our position, for this obvious reason : that Art. 3236, and various Articles of the Code of Practice, enacted in 1825, were not to be found before in our legislation, and are not to be found up to this very day in the French legislation, and that these new provisions are conclusive in our favor.

A brief review of the adjudicated cases on which our adversaries rely cannot be considered as out of place nor devoid of interest.

The cases of *Delor* v. *Montegut*, 5 M. 468, and *Goforth* v. *His Creditors*, 6 M. 519, were rendered in 1818 and 1819, under the old Code ; and, we verily believe, that the jurists who amended the Code in 1824, inserted that very Art. 3236, for the express purpose of correcting the erroneous interpretation of the old Code on that point.

Some time after the promulgation of the new Code of 1825, in which Art. 3236 was engrafted, the same question of contribution arose again, in the case of *Dreux* v. *His Creditors*, 7 N. S. 635 and seq.; the Court, through Judge Porter, admitted that Art. 3236 of the new Code, established a principle contrary to the pro rata system ; but, inasmuch as the insolvency had taken place, and the rights of the creditors before the Court had been acquired, previous to the amendment (3236), introduced in the Code of 1825, the case was decided in conformity with the anterior law as applied in *Delor* v. *Montegut*, and the Court, going on, said : " The other question, whether the mortgage creditors should contribute ratably to the costs in case of a failure of movable property, is not settled by any positive provision of our law, previous to the amendments to our late Code. In the case of *Montegut* v. *Delor*, it was decided in this Court that the mortgage creditors should contribute pro rata to the costs. This decision we think correct under the law as it then stood ; and, as this case does not come within the change lately made by the Legislature, it should receive a similar decision."

In *Janin* v. *His Creditors*, 10 La. 554, Art. 3236 C. C., was not invoked,

not mentioned; the point was not made, not even suggested; and the case was decided merely on the previous decisions of *Delor* v. *Montegut* and *Goforth* v. *His Creditors*, rendered under the old Code.

The case of *Monbouchet's curator* v. *Ferrand*, 18 La. 373, is not applicable; it decided merely that a purchasing creditor retaining the price, is bound to refund or pay over his share of the law charges of an insolvent estate; non constat that he was not the only creditor, or even that he was a mortgage creditor.

In *Cazeau* v. *His Creditors*, 6 Rob. 268, there was no mortgage creditor, no real estate; and the case passed only upon the conflicting pretensions of privilege creditors on movable effects.

So that from the promulgation of the Code of 1825 and up to June 1856, when the case of *Devron* v. *His Creditors*, was presented for adjudication, a single solitary case, *Janin* v. *His Creditors*, came before the Supreme Court, in which application could have been made of Art. 3236 C. C., and no mention of it was made by neither Court nor counsel; and the Court decided the case merely and exclusively according to the two aforementioned decisions rendered under the old Code, and before the important amendment introduced into our Legislation in 1825, had been enacted.

We say, then, without fear of contradiction, that so late as 1856, the point had never been made, and the change brought about by Art. 3236, C. C., never suggested to the Supreme Court. And so it was admitted to be the fact by the Supreme Court in June, 1856, in the case of *Devron* v. *His Creditors*, 11 An. 482, in which the principle for which we contend was, after a long and full investigation adopted, and the pro rata system rejected. Says the Court: "We consider the provision of our Code clear and unambiguous, and that hitherto there has been any interpretation placed upon the articles cited, which could weigh as an authority against what appears to us to be their obvious meaning." P. 485.

It was contended below that Art. 3236 C. C. applied, exclusively, to the different special mortgages lying on the same property. But the very text of the Article resists such an interpretation. Besides, it never was doubted that among the several special mortgages on the same property, priority of date gave priority of right.

The old Code (1808) contained clear and positive provisions to that effect (page 452, Art. 2, p. 460, Arts. 39, 41, etc.); provisions re-enacted in the new Code (1825) under Arts. 3247, 3360, 3362, etc. Then the enactment of Art. 3236 was unnecessary for that purpose; but it was necessary to carry on the application of the same principle to special mortgages on several pieces of property, in consequence of the decisions rendered under the old Code. See also C. P. 684, 685, 682 to 715.

This, if we are not mistaken, leaves no room for doubt. Article 3236 applies to special mortgages on different and separate property, 3297. "The creditors, whose inscriptions have been made on the same day,

(and it is not said on the same property) possess a concurrent mortgage." C. C. 3321, qui concurrent tempore, concurrent jure. Hence the priority of inscription gives a priority of right generally. C. C. 3360, par. 3.

Again, " when it is necessary to reduce donations, in order to give to the forced heirs their reserved quantum, the reduction must be made by beginning with the last donation, and then, successively, ascending from the last to the first." C. C. 1495.

" If the donee ,has, successively, sold several objects of real estate liable to an action of revendication, that action must be brought against third persons, holders of the property, according to the order of their purchases, beginning with the last, and ascending in succession from the last to the first." C. C. 1505.

"The purchaser (at judicial sales) against whom a suit is commenced by a creditor having a legal and judicial mortgage on the property of the debtor sued, may require the creditor to discuss the other property which the debtor has in his possession, and even that which he has alienated since the purchase, because the creditor, who has a general mortgage, can only act against the property of which his debtor has disposed in the order in which the alienations have been made, beginning at the most recent, and ascending to the most ancient." C. P. 715.

All which, by a close analogy, corroborates our right and sanctions our doctrine ; prior est tempore, potior est jure.

LABAUVE, J. B. Soulé, syndic of the creditors of the said insolvent, filed a tableau of distribution, on the 25th January, 1862.

Various oppositions were filed to the said tableau; and our attention has been called particularly to the following objectionable parts thereof :

The movables being insufficient to pay the debts privileged on the movables and immovables, the creditor whose mortgage was the least ancient, was made to contribute first to the loss resulting from the insufficiency.

The ground of opposition is that the deficiency of movables to pay privileged debts should be charged pro rata on all the mortgage creditors.

The said tableau being also silent, as to a mortgage in favor of Madam de St. Romes, to secure the payment of a note in her favor, for $12,988 95, secured by a mortgage, granted on certain property, on the 2d March, 1855; the said Mistress de St. Romes opposed said tableau, alleging, in substance, that she is the holder of said note which is wholly due to her; that the mortgaged property has been sold by the syndic,. who has failed to put her on said tableau as a mortgage creditor and as being entitled by preference to the proceeds, and that she has never released the said mortgage; and that, if any entry has been made on the books of the register of mortgages cancelling said mortgage, the same was erroneous and made without her consent. She prayed that the proceeds of the mortgage property be applied to the payment of said note.

The Court sustained the said oppositions ; ordered that the deficiency

of movables to pay the debts privileged on the movables and immovables be charged pro rata on the mortgage creditors, and that Mrs. de St. Romes should be also placed on the tableau as a mortgage creditor, to be paid by preference on the proceeds of the property mortgaged to her.

The syndic and various creditors took this appeal.

The question as to what mortgage creditors should contribute, in case of deficiency of movables, to pay debts privileged on movables and immovables, depends on the interpretation of Arts. 3236 and 3237 of our Civil Code. We are called, then, to review the decision by our predecessors, upon those two very Articles, in the case of *August Devron v. His Creditors*, 11 A. 482. In that case, a majority of the Court (Judges Spofford and Lea dissenting) decided that the loss resulting from the deficiency of movables to pay debts privileged on movables and immovables, must be borne by the creditors whose mortgage is the least ancient, and so in succession, ascending according to the order of the mortgages. We are of opinion that these Articles have been correctly interpreted in that decision, and, consequently, that the judgment rendered below in this case is erroneous on that question. See the case of *Succession of Thomas O'Laughlin*, lately decided, and not yet reported.

It appears that the mortgage in question, in favor of Widow de St. Romes, was erased from the records of mortgages, on the 8th July, 1857, and that the mortgage note is still in the possession of Mrs. de St. Romes, apparently fully due and uncancelled.

It is contended that Deverges, the debtor and mortgagor, came in possession of the mortgage note, went to the Notary before whom the act of mortgage had been passed, and asked the Notary to cancel the mortgage; and that the mortgage was accordingly erased. We have found in the record no satisfactory testimony in support of that assertion. We are referred to the statement or report of Walton, an auditor, wherein we find that said *Walton* says: "Now Joseph Lisbony, in his statement to the auditors, says that Pierre Deverges came to his office with this note, some time after its maturity, and asked him to cancel the mortgage, that, by virtue of Art. 3346 C. C., he did so, and granted a certificate to that effect; he further states that, through an oversight, he did not erase the name of the drawer." This is not legal testimony before us.

The opposition to Mrs. de St. Romes' mortgage, relies entirely on a copy from the book of the recorder of mortgages, showing an entry on the margin opposite the mortgage, as follows :

" Eteinte et annullée conformément à l'article 3346 du Code Civil, et suivant le certificat de Jos. Lisbony, notaire, en date du 6 Juillet, 1857, et déposé ce jour en ce bureau. Nlle-Orléans, 8 Juillet, 1857."

From this entry, it is contended that the mortgage of Mrs. de St. Romes was effectually erased and cancelled, and that she has now no right, as mortgagee, to the proceeds of the property so mortgaged to her.

We must bear in mind that the mortgage note is now unpaid and un-

cancelled, and in the possession of Mrs. de St. Romes, the payee and mortgagee, and negatives the fact that it has ever been exhibited to the notary according to Art. 3346 C. C.; and if the notary did grant the certificate without the production of the note as paid, that certificate was unauthorized and null, and not binding on the mortgagee, and the erasure of the mortgage thereupon by the Recorder might possibly not affect Mrs. de St. Romes' rights, or at least it is a very important legal question, which we reserve. We are of opinion that the remanding of the case may afford the interested parties an opportunity to show, by legal evidence, that the certificate in question, of the notary, was properly and legally granted.

It is therefore ordered and decreed, that the judgment of the District Court be reversed, and the case be remanded to be proceeded in according to law and in conformity with this decision; Mrs. de St. Romes, appellee, to pay the costs of this appeal.