Succession of Henry.

## No. 11,091.

### SUCCESSION OF JOHN HENRY.

When the record clearly exhibits a "matter in dispute" exceeding $2000, a motion to dismiss on the ground that the "fund to be distributed" has been reduced below that sum will be denied.

A fee of $5000 in a succession whose effects amount to $62,000 is not excessive, when important and valuable services have been rendered by the attorney in litigation and in the general management of the succession, which devolved exclusively upon him in consequence of the continued illness of the executor.

The junior mortgage, the "least ancient," whether there are one or several immovables mortgaged, is subject to contribute to the payment of privilege debts in case of deficiency in proceeds of sale of movable property.

APPEAL from the Civil District Court for the Parish of Orleans. Voorhies, J.

White, Parlange & Saunders for Opponent and Appellant.

J. C. Gilmore, Gilmore & Baldwin, Denegre & Bayne, and P. L. Fourchy, contra:

In determining the fees of attorneys for services rendered in settling a succession, we must consider the amounts involved as shown by the inventories, and also the care and responsibility placed on the shoulders of these attorneys and the professional skill and attention shown by them in avoiding litigation.

Where fees charged by attorneys in a succession are allowed by a judge below, not withstanding opposition filed thereto, this court will presume that the lower judge can best determine the value of those services and will not reduce the amounts.　Succession Brady, 43 An. 165.

Where the proceeds of property subjected to several successive mortgages are insufficient to pay all the debts and the charges, the loss which may result must be borne by the creditor whose mortgage is the least ancient. R. C. C., Arts. 3269, 3270; cases cited.

An opponent will not be permitted to join inconsequential objections with a demand for reduction of attorney's fees in this court.

## ON MOTION TO DISMISS APPEAL.

The opinion of the court was delivered by

FENNER, J.    The motion to dismiss is based on two grounds.

1. That the appeal bond is insufficient in amount.

2. That the amount in dispute, or fund to be distributed, is beneath the lower limit of this court's jurisdiction.

The first point has no merit, and as it is not alluded to in movers' brief we assume that it is abandoned.

The second is equally without merit.    The appeal is from a judgment on an opposition to an account which proposed the dis-distribution of a fund exceeding $60,000.

The account exhibited privileged charges aggregating about $9000, one item for which was $5000 to the succession attorneys.    The account specifically recited that the Whitney National Bank, as junior mortgage creditor, was bound to contribute from the proceeds attributable to its mortgage the whole of the privileged debts after first applying to said debts the proceeds of sale of certain furniture, leaving a balance of $5978.76 to be contributed by the bank.

The Whitney Bank filed timely opposition to the account, specially opposing the privileged allowance of $5000 attorney's fees as excessive, and also opposing, on that ground, the amount of the contribution claimed from it, and prayed for an amendment reducing the attorney's fees to $2500, and reducing the amount of its contribution accordingly.

Subsequently the bank consented to the payment of $2500 to the attorneys, both parties reserving their respective rights as to the remaining $2500 to be decided by the court under the pending opposition.

Under this reservation the opposition went to trial and decision, resulting in a judgment dismissing it, maintaining the attorney's fees at the full sum of $5000, and maintaining the contribution required from the Whitney Bank as stated on the account.

Irrespective of subsequent dealings with the "fund to be distributed," the case clearly exhibits a "matter in dispute" exceeding $2000 and falls under that branch of our appellate jurisdiction.

Motion to dismiss denied.

### ON THE MERITS.

McENERY, J.   The executor of this succession filed an account, which was opposed by the Whitney National Bank.   The opposition was directed to the item of $5000 for attorney's fees, and subjecting the property, on which the bank held a junior mortgage, to the payment of several privileges on all the property.   There was judgment dismissing the opposition, and the bank appealed.

There were several attorneys employed in the settlement of the succession, J. C. & S. L. Gilmore, and Bayne & Denegre and P. L. Fourchy.

By agreement between all parties the fee which may be allowed J. C. & S. L. Gilmore shall embrace the amount due for services to the succession by Bayne & Denegre and P. L. Fourchy, which they are to apportion among themselves.

Mrs. Henry, the executrix, died after the account was filed, and B. W. Taylor qualified as executor, employing Bayne & Denegre, but J. C. & S. L. Gilmore, by consent, continued their services in prosecuting to final judgment the account filed.

It appears from the record that the proceeds of the sale of the property, sold under order of court to pay debts, amounted to $62,-000.   There was immovable property sold to satisfy special mortgage debts under executory process, and there are other facts showing that the property in the succession amounted apparently to say $90,-000.   But the attorney's fees are not based exclusively on the amount of the inventory.   If this were so the fee would be restricted to commissions on the amount of the property in the inventory actually administered.

Mrs. Henry was infirm and unable to give personal attention to the business of the succession.   The attorneys were compelled to visit her residence to transact business, and made some fifty visits to her. While the litigation in settling the succession was not difficult or intricate, yet there was much done outside the court room which involved great responsibility and required time, skill and judgment. Their time was also occupied in investigating the affairs of the John

Henry Shoe Company, which from the testimony of one of the wit-nesses, a prominent attorney, who also had his attention directed to the affairs of that company, required considerable time, labor and skill.

The Messrs. Gilmore gave a detailed account of their services. Two prominent members of the bar who heard their statement, and the judge before whom all the proceedings were conducted, agree that their services were worth $5000.

The fee charged is to be in full for all services rendered, and the account, although a provisional one, is to be considered final.

There were seven pieces of immovable property in the succession, each burdened with a special mortgage.

The personal property was insignificant in value when compared to the value of the immovable property. All was sold to pay debts. In the account the privileged claims are stated, and the executor says in the same, " all the above privileged claims to be paid in full out of the proceeds of the sale of furniture (being the only personal property upon which anything was realized), and by contribution of junior mortgages held by the Whitney National Bank."

The Whitney Bank held the junior mortgage of the several mort-gages resting separately on each piece of property, and was the second mortgage on the Carondelet street property.

It is contended by opponent that in selling assets of a succession each asset should be specially charged with its own cost of sale. We have been referred by opponents' counsel to Art. 3262 of the Civil Code as governing this case. But that article has reference only to the privilege resulting from the care and the preservation of the property, which yields only to that for the charges on the sale of the thing preserved.

Art. 3269, Civil Code, prescribes the manner in which mortgaged property shall be discussed to pay general privileges, when contri-bution must be made to supply the deficiency from the sale of movable property. No distinction is made in the Civil Code, be-cause each piece of property is affected by a mortgage that does not encumber another.

The privileges which embrace both movable and immovable property must be paid out of the proceeds of the sale of the latter when there is a want of sufficient funds from the sale of the former. C. C. 3253.

It is true that the property, and not the mortgage creditor, owes the contribution. But the Civil Code, Art. 3269, provides that the immovable on which the "least ancient" mortgage rests shall make the contribution, and when there are two or more mortgages on this piece of property of equal dignity they shall pay pro rata.

These general principles affect all the property of the succession and are superior to mortgage debts.

The mortgage rights were acquired with the general privileges in existence, to be enforced when all the debtor's property should be made subject to the payment of all his debts. It is then but just and equitable that, when the immovables are required to make the contribution, those burdened with the youngest mortgages should be made to do so. When the senior mortgage was placed on a specified piece of property the other immovable property of the debtor was subject to the contribution. If afterward affected by a mortgage, it was so affected with the privilege resting upon it, and there is, therefore, no injustice in requiring this property to make the contribution.

How proceeds of mortgaged property, whether there are one or several mortgaged immovables, shall contribute to the payment of the privileged debts in the order in which the property was mortgaged, commencing with the youngest and extending to the oldest, has been repeatedly judicially determined, and is no longer a debatable question. August Devron vs. Creditors, 11 An. 482; Suc. O'Laughlin, 18 An. 142; Suc. Hautan, 32 An. 54; Deverges vs. Creditors, 18 An. 169; Suc. Rousseau, 23 An. 2.

Judgment affirmed.