Rice on Evidence expresses the same idea, as follows:

"Restating the above proposition, we may say that facts showing the existence of any state of mind, such as intention, knowledge, good faith, negligence, rashness, ill will, or good will against any particular person, or showing the existence of any state of body or bodily feeling, are relevant, when the existence of any such state of mind or body or bodily feeling is a fact in issue or relevant to the issue.

"Any other facts are relevant from which the facts in issue are presumed, or are logically inferable, or which, having regard to the relation of cause and effect, or the ordinary motives of human conduct, or the usual sequence of events, would, considered by themselves, create a probability with respect to the facts in issue."

The fact in issue needing to be explained is the motive with which the deceased was entering the room, and the inquiry must be made from the standpoint of the accused at the moment he was called upon to act, and the events of the preceding day, as well as the threats, tend directly to show what this motive was. This inquiry into the motive of the deceased in entering the room is precisely the same as it would have been if, instead of having been killed, he had killed, and his motive in entering was being inquired into. Would any one then have said that the events of the preceding day and the threats could not be proved for showing his motive in entering into the room. These antecedents, considered from the standpoint of the accused at the moment, show beyond question that the motive of the deceased in entering the room was deadly. If so, his act was a hostile demonstration.

It becomes unnecessary to pass upon the bill reserved to the question referred to above as having been put by the juror to the accused. We will say, however, that the ruling of the learned trial judge was correct, to the effect that, while the question was improper and the accused was not bound to answer it, yet it did not necessarily show the juror to be incompetent to sit on the case, or so manifestly tend to prejudice the case of the accused as to make a new trial

necessary. True, the question was pregnant with an assertion of the guilt of the accused, but that assertion did not purport to be made as a statement emanating from the juror and based upon some independent information possessed by him, but simply as an inference drawn, just as any other member of the jury might have drawn it, from the statement of the accused and the other evidence in the case.

Judgment and verdict set aside, and case remanded for trial.

---

(40 South. 693.)

No. 15,771.

## ZEIGLER v. HIS CREDITORS.

(Jan. 29, 1906.    Rehearing Denied Feb. 26, 1906.)

INSOLVENCY — UNAUTHORIZED PAYMENT BY SYNDICS—LIABILITY THEREFOR.

Both syndics appointed to an insolvency having died, their heirs presented a final account of administration. It showed the amounts received and disbursed by the syndics and a trifling balance of money on hand. Certain mortgage creditors opposed the account on the ground that they were entitled to receive payment in full of their claims, that the disbursements as made by the syndics were without authority of the court, that payments in full had been made to creditors subordinate in rank and to right of payment to themselves, and that the effect of the payments made by the syndics would be besides to throw upon opponents costs and expenses of administration, for which others than themselves were wholly responsible. They prayed that the accounts be amended so that they should be paid their claims in full and for judgment against the syndics. Judgment was rendered in their favor, and the heirs of one of the syndics appealed, urging that the amounts paid out were for debts justly due and liberated the insolvency to that extent; that, if opponents had any claim to be paid, under the circumstances they should assert their rights against the creditors who had been paid, whom they charge should not have been paid until after the payments of the costs, as provided by article 1188 of the Civil Code; that opponents should not be permitted to recover more than the amount in their hands; that, if they had any remedy against themselves, it was by following the provisions of articles 1055 and 1056 of the Code of Practice, and judgment against them should not have been rendered by the court.

*Held*, that the remedy resorted to and accorded was justified by the decision in Ford v. Kittredge, 28 La. Ann. 113; that, appellants having made payments without orders of court, the provisions of article 1188 of the Civil Code did not apply to the case; that, if repetition or credit could be claimed in any direction, it should be sought by appellants themselves. Thornton v. Mansker, 10 La. 127; Seelig v. Dumas, 21 South. 91, 48 La. Ann. 1494.

(Syllabus by the Court.)

Appeal from First Judicial District Court, Parish of Caddo; James Martin Foster, Judge ad hoc.

In the matter of the insolvency of S. J. Zeigler. From a judgment rendered on oppositions filed by M. L. Scovell and Vinnie Gaines to the final account of the syndics of the insolvent, S. J. Zeigler and others appeal. Affirmed.

Alexander & Wilkinson, for appellant. Charles Latham Gaines, for appellees.

## Statement of the Case.

NICHOLLS, J. This is an appeal taken by the heirs of S. Levy, Jr., to wit, J. M. Levy, Mrs. Juliette Kahn and her husband, Leon J. Kahn, and Mrs. Fanny Meyer and her husband, Norman Meyer, from a judgment rendered by the district court for the parish of Caddo, upon oppositions filed by Mrs. M. L. Scovell and Mrs. Vinnie Gaines to the final account of the syndics of S. J. Zeigler.

The judgment was as follows:

"By reason of the law and the evidence being in favor thereof, it is ordered, adjudged, and decreed that the full amount of proceeds of sale of the property specially mortgaged to said opponents by S. J. Zeigler, and the proceeds of the sale of the property held by the community formerly existing between S. J. Zeigler and his first wife, Sallie E. Zeigler, deceased, mother of opponents be paid to said opponents without any deduction therefrom for costs and expenses of administration.

"And it appearing from the evidence, and as stated in the written opinion on file, that from the proceeds of sale of the property specially mortgaged by S. J. Zeigler to said opponents, there remains due to said opponents the sum of $2,704.37, it is ordered, adjudged, and decreed that the said opponents have judgment for said amount against the estates of S. Levy, Jr., and L. M. Carter, and against J. M. Levy, Juliette Levy, wife of Leon J. Kahn, and Fannie Levy, wife of Norman Meyer, being the heirs of S. Levy, Jr., and against Mrs. Mattie Carter and Josie L. Carter, heirs of L. M. Carter, in solido, together with 5 per cent. per annum interest on $1,083 from May 24, 1897, the date of sale of Haynes plantation, and on $1,621.37 from August 9, 1901, date of sale of block 62, until paid."

The reasons assigned by J. M. Foster, judge ad hoc, who rendered judgment, were as follows:

"This opposition was filed on the 1st day of March, 1902. The basis of opponent's objection is that the costs of administering the property on which they had a mortgage fell in a large measure upon opponents. They claim that the cost of administering the insolvent's effects should be borne first by the junior mortgaged property. They allege that their mortgage was the senior or most ancient mortgage upon any property administered by the syndics. Upon trial there was judgment in favor of opponents, ordering that they be paid the full amount of their claim without deducting therefrom any amount for costs of administration.

"A new trial was moved by the heirs of S. Levy, Jr., which motion set up the following grounds:

"(1) That judgment was rendered without notice to petitioners, and that they were not present or represented, and it was consented to in violation of their rights. That if any one appeared at such hearing, claiming to act for the heirs of Levy, such person acted without authority.

"(2) That the judgment was erroneous, in that it deducts from the credit claimed by S. Levy, Jr., the sum of $2,395.93, paid Mrs. M. F. Smith. The decision in Zeigler v. His Creditors, in 49 La. Ann. 144, 21 South. 666, is pleaded as res adjudicata, upon the ground that the judgment in that case ordered the payment to be made to Mrs. M. F. Smith and cannot be impeached.

"(3) That the judgment is erroneous, in so far as it recognizes the rights of opponents to be paid by preference over appearers and over all costs and expenses of administration.

"A new trial was granted upon these allegations. When the case was taken up on the second trial counsel for Levy heirs withdrew, in open court, the allegations to the effect that appearers had not been represented, and that if any one appeared for them it was without authority.

"The only point raised by counsel for the heirs of Levy in his oral argument and in his brief are:

"First. The syndics cannot be personally bound.

"Second. The payments made cannot be disturbed.

"Third. The accounts presented must be approved.

"In Zeigler v. His Creditors, 49 La. Ann. 144, 21 South. 666, the Supreme Court considered and passed upon the claims of the various creditors who were contending before it. It ordered that the community be administered in the insolvency. I can see no reason why under the facts in this case the general rule applicable to both successions and insolvent estates should not apply; that is, that in settling the costs of administration they should first bear upon that property upon which rested the least ancient mortgage. It is not disputed that opponents' mortgage was the most ancient. Civ. Code, art. 3269; Succession of Henry, 45 La. Ann. 156, 12 South. 365; Deverges v. Creditors, 18 La. Ann. 175.

"Counsel for Levy heirs argues that the judgment in Zeigler v. His Creditors, 49 La. Ann. 144, 21 South. 666, is res adjudicata of the contentions made by opponents in this case.

"In that decision the Supreme Court exhaustively discussed and considered the questions presented to it. It passed upon the rank of different claims presented. It made amendments to the judgment of the district court. It passed upon and fixed the rights of the minors in the community property, and ordered that the community be liquidated and settled inside the insolvency and that the syndics recast their entire account.

"A careful examination of the above case does not lead me to the conclusion that the court ordered the payment of the different claims therein passed on absolutely. On the other hand the syndics were ordered to recast their entire account. So far as I can find from the records there was no new or amended tableau filed, but a final account was filed intending to be in accordance with those directions. To this final account Mrs. Scovell and Mrs. Gaines have objected by filing an opposition. They practically say: 'Your account is not in accordance with the decision of the Supreme Court, because under the law the costs of administering the community property should be borne by the junior mortgaged property, whereas you have taxed that property which had been the most ancient rank with that burden,' and I think their manner of proceeding to have been perfectly proper. They made known their objection by opposition to the account as soon as they were acquainted with that account. Final account was filed February 18, 1902.

"I cannot see that the decision in 49 La. Ann. 144, 21 South. 666, is res adjudicata of the issue of this case. That decision directed the syndics how to make up their account, and if, as a matter of fact, they have placed the costs upon certain property or certain creditors that in law should not have borne it, then it would be a denial of the rights of opponents to cut them off from a remedy. Opponents have not slept upon their rights, but proceeded timely to acquaint syndics with their objections.

"As to the contention of the heirs of Levy that the creditors have been paid, and therefore opponents cannot be heard except by charging maladministration on the part of syndics, I think that is answered by the articles of the Civil Code (1063 and 1150).

"The syndics should have received an order of court to pay out the money before so doing, or else do so at their peril.

"If there is an order of court directing the syndics to pay out the funds, I have not been referred to it, nor have I found same in the record. The decretal part of the case in 49 La. Ann. and 21 South. was, among other orders, that the account should be recast. After that account was recast, it should have been filed and all parties given an opportunity to be heard as to whether or not it accorded with the decree and judgment rendered by the Supreme Court; else the syndics would have to take their chances as to whether or not they had complied with the judgment.

"There seems to be no contention as to the account in controversy, or, if there was, it can be arrived at by reference to the record.

"Mr. Leonard in his evidence given December 2, 1904, states that syndics received from the sale of the lots in block 62 $10,325, and that of that amount he paid opponents the sum of $7,825, leaving a balance due them from that source of $2,500.

"The proceeds of the Haynes place amounted to $3,000, as shown by syndics' account. Under decision in 49 La. Ann. 185, 21 South. 666, opponents' mortgage is recognized, and in the same decision their proportion of the proceeds is fixed at $19/64$ of one-eighth and $83/128$ of one-half, which would amount to $1,083. (See decision on page 165 of 49 La. Ann., page 675 of 21 South. There the fractions are $83/128$ of one-eighth, but a reference to the certified copy of the mortgage will show that the latter fraction is a clerical error.) The above amounts aggregate the sum of $3,583.

"From that total should be taken $878.63, which the syndics' account shows was reserved for the minors of the second marriage, and which is not denied by opponents. This would leave a balance of $2,704.37 due by the syndics to opponents. Opponents have claimed interest on this amount under the authority of Hagan v. Sompeyrac, 3 La. 159; Caldwell v. Creditors, 9 La. 265; Zeigler v. Creditors, 49 La. Ann. 158, 21 South. 666.

"I think they are entitled to legal interest on this amount from date the property upon which their mortgages rested was sold."

The only appellants are the heirs of Levy. The heirs of Carter have not appealed. Carter and Levy, the syndics, are themselves both dead.

### Opinion.

In the brief filed on behalf of appellants their counsel urged that, if the opponents

are entitled to anything at all, they must assert their rights against the creditors who have been paid, and whom they charge should not have been paid until after the payments of the costs.

"The Civil Code (art. 1188), in providing for the payment of unpaid creditors who appear after the administrator has paid out the funds in his hands, gives to the new creditor a right of action against those who have been paid to compel them to refund the proportion they are bound to contribute in order to give to the new creditor a part equal to that which they would have received, had they presented themselves at the time of the payment of the debts of the succession, declaring that in no case can they disturb the administrator who has made payment under the authorization of the judge."

They cite Michel's Heirs v. Knox, 3 La. Ann. 399, and Succession of Coughlin, 35 La. Ann. 343.

The proposition contended for is not well founded. The situation of affairs provided for in article 1188 of the Civil Code is radically different from that shown by this record. The payments made by the administrator under article 1188 are payments made by him "under the authorization of the judge"; whereas in this instance they were made without such authorization. In the one case there was no blame or imprudence to be attached to the administrator, while in the other there is. To the claim made by appellants it can be well replied that, having frustrated the opponents in the exercise of their legal rights, we do not think they can be permitted to turn them round to a tedious and possibly fruitless legal pursuit of their rights. Seelig v. Dumas, 48 La. Ann. 1498, 21 South. 91; Thornton v. Mansker, 10 La. 127.

If repetition or credit can be claimed in any direction, it must be sought by appellants themselves.

Appellants object that the judgment rendered in this case was rendered in the absence of a charge of misconduct on the part of the syndics. They urge that opponents should be permitted to recover nothing more

than the funds shown to be in their hands, and in no event should they be accorded a personal judgment against them, in the absence of a specific prayer to that effect, following allegations justifying it.

The prayer of the original opposition filed by the appellees after stating their cause of complaint was that the syndics' final account be so amended (as it was claimed it should be) and the syndics be ordered to pay them their claims as set forth. The prayer of their amended opposition was that:

"They have judgment against the syndics in the full sum of $4,583, as set forth, and that they be ordered to amend their account accordingly. They prayed for all orders and decrees necessary, and for general relief."

In the oppositions filed, appellees, after setting out their actual legal rights, expressly charged that the syndics had, without legal warrant, paid out in full claims inferior to their own, and that their course would cause the costs of the insolvency to fall in a large measure upon themselves.

There was no charge made of intentional wrongdoing; but the facts alleged, if sustained, certainly showed maladministration so far as opponents were concerned.

The account filed was a final account. Amounts which should properly have been applied to the payment of opponents' claim had gone beyond remedy out of the syndics' hands into the hands of particular creditors. Accountants were admittedly without means in their hands to pay the claims. It would have been a vain act to have called upon appellants to pay them out of the property in their hands. Appellants were admittedly the heirs of one of the syndics, and as such filed a final account, in which was affirmatively disclosed judicially the legal liability of their ancestor to the opponents.

Appellants insist that under such conditions the only course open to the opponents was to follow exactly provisions of articles 1055 and 1056 of the Code of Practice; that

they should have first obtained an order from the court directing the syndics to pay them the amount of their claims, and follow up this order by a demand of payment, and on failure on their part to pay them to issue execution.

The claim on the part of the appellants that the legal method of proceeding in a case of this kind was that pointed out by articles 1055 and 1056 of the Code of Practice was for some time insisted upon as that which should be resorted to (see Lobit & Charpentier v. Castille, 14 La. Ann. 779; Lockhart v. Wall, Administrator, 14 La. Ann. 273); but in Ford v. Kittredge, 28 La. Ann. 113, a different remedy was permitted.

In that case the administrator has been dismissed from office, and the creditor was allowed to have recourse for the payment of his claim to a direct action against the administrator, in spite of the contention made that the dismissed administrator could only be held to account through a settlement to be made with his successor. In the case before us the demand of the creditors is not advanced in a direct action against the syndic or his heirs or surety, but by way of opposition to the final account submitted on behalf of the deceased syndics after full opportunity to all parties to contest the same if any legal cause they had so to do.

So far as the heirs of Levy are concerned the course pursued by the creditors would be no more summary against them than would be that pointed out by the articles of the Code; for the order of the court to the administrator to pay is given the force and effect of a final judgment, which can be followed up by a writ of fi. fa.

Appellants concede the priority of the claims of the appellees over those of Mrs. Smith and of the First National Bank on the property upon which their respective mortgages rested and the amount of their claim. They admit the correctness of the legal

116 LA.—9

proposition advanced in the syllabus of the brief of the appellees to the effect that:

"With the exception of special privileges, which exist on immovables in favor of the vendor, of workmen and furnishers of materials, as declared above, the debts privileged on the movables and immovables generally ought to be paid, if the movables are insufficient, out of the product of the immovables belonging to the debtor, in preference to all other privileged and mortgage creditors.

"The loss which may then result from their payment must be borne by the creditor whose mortgage is the least ancient, and so in succession, ascending according to the order of the mortgages, or by pro rata contributions where two or more mortgages have the same date. Civ. Code, art. 3269.

"When the debts privileged on the movables and immovables cannot be paid entirely, either because the movable effects are of small value, or subject to special privileges which claim a preference, or because the movables and immovables together do not suffice, the deficiency must not be borne according to the order established above, and the loss must fall on those which are of inferior dignity. Civ. Code, art. 3270; Devron v. His Creditors, 11 La. Ann. 482; Deverges v. His Creditors, 18 La. Ann. 169; Succession of Henry, 45 La. Ann. 156, 12 South. 365."

All administrators, executors, curators, and syndics can only pay out funds in their hands when authorized to do so by a competent court, and that on a tableau of distribution properly presented on due notice having been given. Civ. Code, arts. 1063, 1064, 1150; City Item Co. v. Phoenix Furniture Concern, 108 La. 258, 32 South. 469.

They urge, however, that certain specific expenditures which they have made in the way of taxes should be given credit for as priming the claims of the appellees themselves. If such expenditures have been made, they have not been specifically pointed out to us as should have been done by counsel. The labor of the court is too severe and continuous for it to be expected that it should sift or analyze testimony with the view of discovering items of that character. Counsel should make a tabulated statement of such expenditures, if they exist, giving amounts, dates, character, and all other details, coupled with references to the particu-

lar pages of the transcripts on which the testimony supporting them is to be found.

Counsel can present such statement on application for a rehearing, if they think proper to do so. As matters stand, we think the judgment appealed from is correct, and it is hereby affirmed.